# UNITED STATES BANKRUPTCY COURT
# FOR THE
# DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**INVENT RESOURCES, INC.,**                    Chapter 7
      Debtor                    Case No. 10-14056-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matters before the Court are the "First Interim Application for Allowance of (1) Trustee's Commission and (2) Compensation and Reimbursement of Expenses of Murphy & King, P.C. as Counsel to the Trustee," and the "Partial Opposition to First Interim Application of (1) Trustee's Commission and (2) Compensatoin [sic] and Reimbursement of Expenses of Murphy & King, P.C. as Counsel to the Trustee" filed by Urszula Hed, Executrix of the Estate of A. Zeev Hed ('Ms. Hed").  Harold B. Murphy, as Chapter 7 Trustee of Invent Resources, Inc. ("Invent" or the "Debtor"), and Murphy & King, P.C. filed a Response to Ms. Hed's Partial Opposition.  The Court heard the matter on September 19, 2012 and ordered the filing of supplemental pleadings.

## II. PROCEDURAL AND FACTUAL BACKGROUND

An involuntary petition was commenced against the Debtor on April 15, 2010 by Sol Aisenberg ("Aisenberg"), George Freedman ("Freedman"), and Stanley Eckstein ("Eckstein"). Invent did not contest the involuntary petition and an order for relief entered on May 14, 2010.

1

The United States trustee appointed Harold B. Murphy, Esq. as the Chapter 7 Trustee on May 17, 2010.

Ms. Hed is a shareholder of Invent and has been a shareholder of lnvent continuously since 1997.  She was a joint tenant with her late husband, A. Zeev Hed, of 25,000 shares of Invent.  A. Zeev Hed passed away on March 11,2008 and, according to Ms. Hed., she became the sole owner of  25,000 shares.[1]  She also filed a proof of claim against the estate in the amount of $234,750 on account of services allegedly rendered by her late husband.

Approximately eight months after the entry of the order for relief, Ms. Hed filed a motion seeking royalty payments from Excel Dryer, Inc. ("Excel") for the calendar year 2009. The Chapter 7 Trustee opposed the motion, noting, *inter alia,* the following:

> The Debtor was founded in or around 1997 for the purpose of combining the intellectual resources of its then four founders (together with their spouses, the "Shareholders").  The Shareholders, along with their spouses, appear to have received a pro rata share of 100,000 shares of the outstanding equity in the Debtor with 25,000 shares jointly issued to each founder and his spouse. Upon information and belief, neither the original stock certificates, nor the Debtor's books and records regarding stockholders are available to be produced.
>
> After a number of years of operations, the Debtor's efforts produced several patents which were licensed to third parties. The most lucrative of these appear to be the Debtor's patents relating to hand-drying technology which were licensed to Excel, pursuant to a certain Consulting and Licensing Agreement dated March 4, 1999 (the "Excel Agreement"), in exchange for the payment of royalties to the Shareholders.  Over time, the royalties disbursed pursuant to the Excel Agreement grew into a significant revenue stream, totaling in excess of

---

[1] Ms. Hed has filed numerous motions in this case, including a "Motion to Appoint New Trustee," a "Motion to Acknowledge Urszula Hed as a Shareholder of Invent Resources, Inc.,"a "Motion to Disburse 2009 Royalty Payments to Urszula Hed," as well as Oppositions to many motions filed by the Trustee.

2

$600,000 a year by 2010.[2]

Excel also opposed the motion, alleging material breaches of obligations of Invent and its shareholders with respect to a license agreement.  Following a hearing, the Court denied Ms. Hed's motion seeking royalty payments and directed the Trustee to submit a status report within 60 days.

The Trustee subsequently filed a "Motion to Approve Agreement for Interim Payment" from Excel and a Status Report.  In his Status Report, the Trustee disclosed that he had commenced a proceeding with the American Arbitration Association against Excel as required under the license agreement.  Additionally, he represented that he had negotiated an interim royalty payment of $400,000 in partial satisfaction of Excel's past-due royalty payment obligations.  Ms. Hed objected to the Motion to Approve Agreement for Interim Payment.  At a hearing conducted on July 25, 2011, the Court ordered the Trustee to file a declaratory judgment action.  The Trustee complied with the Court's order and, on August 24, 2011, filed a complaint against Ms. Hed, Richard Pavelle ("Pavelle"), Aisenberg and Freedman to adjudicate, *inter alia,* the respective rights of the defendants and Invent to certain royalty payments or proceeds received from the license, sale or other transfer of intellectual property developed in the course of Invent's business.

Eventually, the Trustee filed a Motion to Approve Agreement and Authorize Sale of Intellectual Property Free and Clear of Liens, Claims, Interests and Encumbrances pursuant to which he sought approval of an agreement between himself and Excel.  According to the

---

[2] The four founders were Aisenberg, Freedman, Richard Pavelle and Zeev Hed.

3

Trustee,

> The Agreement: (a) resolves disputes between the Trustee and Excel with respect to pastdue [sic] royalties under a License Agreement (as defined below), and provides that Excel shall pay all royalty payments due and owing through October 31, 2011 (subject to the Trustee's audit rights) in an amount estimated by Excel to be approximately $950,000; and (b) provides that Excel shall purchase the Intellectual Property (as defined below) which was the subject of the license from the Debtor's estate for the amount of $1,000,000, subject to higher and better offers. The proposed purchase price for the Intellectual Property includes $150,000 on account of royalty obligations due and to become due for the period of November 1, 2011 through January 31, 2012.

Ms. Hed, Aisenberg, Freedman and Pavelle filed limited objections and reservations of rights with respect to the Trustee's sale motion.

On January 20, 2012, the Court approved the sale.  In addition, the Court sustained the Trustee's objections to the proofs of claim of Aisenberg, Freedman and Pavelle.  The Court deemed the Trustee's objection to the claim of Ms. Hed a contested matter.  In early August of 2012, however, the Trustee effectuated a global settlement with all the defendants in the adversary proceeding together with his objections to their claims.  The settlement agreement provided in pertinent part the following:

> a. The Excel Assets. The Parties acknowledge, stipulate and agree that each of the estate and each Asserted Co-Owner owns twenty percent (20%) of the Excel Assets.

> b. The Excel Funds. Within five (5) business days after the entry of a final nonappealable order approving the Settlement Agreement (the "Final Order"), in recognition of the efforts of the Trustee and his professionals in connection with the negotiation and effectuation of the Sale Agreement, and in order to make adjustments on account of claims by and between the Co-Owners, the Excel Funds shall be distributed from escrow as follows:

>> i. First, to the Estate, an amount equal to twenty percent (20%) of

4

the Excel Funds (the "Estate Funds");

ii. Second, to the Co-Owners, the following amounts:
    A. To Aisenberg, the amount of $48,000;
    B. To Freedman, the amount of $48,000;
    C. To Pavelle, the amount of $66,000;
    D. To Ms. Hed, the amount of $160,000;

iii. Third, to Ms. Hed, an amount equal to twenty-five percent (25%) of the remaining balance of the Excel Funds after the foregoing distributions, plus $70,000 ($70,000 being the "Hed Allowed Claim"), in full and complete release, satisfaction and discharge of the Hed Claim; and

iv. Fourth, to each of Aisenberg, Freedman and Pavelle, one-third of the remaining balance of the Excel Funds after the forgoing distributions.

The Court approved the Settlement on September 19, 2012.

## III. THE FEE APPLICATION AND THE PARTIAL OBJECTION

Pursuant to 11 U.S.C. §§ 326, 328, 330 and 331, Federal Rule of Bankruptcy Procedure 2016 and Massachusetts Local Bankruptcy Rule 2016-1, the Trustee seeks interim allowance of his commission. The Trustee requests approval of payment of an interim commission, pursuant to 11 U.S.C. § 326, in the amount of $50,000.[3]

M&K and Harold B. Murphy ("Attorney Murphy"), as counsel to the Trustee, seek compensation for services rendered and expenses incurred during the period of May 17, 2010 through and including July 31, 2012. M&K requests approval of payment in the amount of $368,193 on account of services rendered and $12,428.68 on account of expenses incurred.

---

[3] The Trustee stated that pursuant to 11 U.S.C. § 326, he is entitled to a commission of $92,593.21 based upon his proposed disbursements.

The Trustee and M &K's Application included a 38-page, comprehensive and detailed narrative of services performed, as well as an itemized breakdown containing a description of services provided by the Trustee and counsel to the Trustee, the date services were performed, the identity of the attorney or paralegal performing services and the number of hours worked by each professional in six minute intervals.  In addition, the Trustee represented that, as Trustee, he had collected funds from Excel in the total amount of $2,389,345 and that the bankruptcy estate's portion of funds under the settlement "should be sufficient to satisfy all allowed claims against the Estate."

In her Partial Opposition, Ms. Hed objected arguing that the Trustee used non-qualifying funds in computing his commission, namely the payments to his accountants and attorneys, although she later abandoned that argument.  With respect to the compensation of M & K, Ms. Hed argued that Attorney Murphy is not entitled to compensation for his services as counsel to the Trustee because he is not a disinterested party and because he "charged the law firm hourly rates of $550, $575 and $595 with no rationale for the change in the hourly rate." Additionally, Ms. Hed argued that the compensation sought by M & K with respect to the adversary proceeding, i.e, $29,837.50, was unreasonable and of no benefit to the estate because the results obtained were the same as an informal settlement offer she made to the Trustee's counsel before the commencement of the adversary proceeding.  She supported this assertion with an Affidavit filed by her attorney, Paul Pappas, Esq.

The sum of $29,837.50 was not related to the adversary proceeding, however.  The compensation sought by M & K with respect to Category V - Services Relating to Shareholder

Disputes and Related Litigation totaled $89,347.50 and included much more than the services

related to the adversary proceeding.

In her Supplement to her Partial Opposition, Ms. Hed, citing In re Gary Fairbanks, Inc.,

111 B.R. 809, 811 (Bankr. N.D. Iowa 1990),[4] asserted that Attorney Murphy was charging

---

[4] The court stated:

The court may, under 11 U.S.C. § 327(d), authorize a trustee to act as an attorney for the estate if such authorization is in the best interest of the estate. However, the trustee may be compensated as an attorney

> [o]nly to the extent that the trustee performed services as an attorney ... for the estate and not for the performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney . . . for the estate.

11 U.S.C. § 328(b). It is, therefore, well settled that courts may not compensate an attorney appointed to represent the trustee for services which are statutorily required of the trustee, In re King, 88 B.R. at 770, or that are ordinarily performed by a competent trustee without assistance from counsel. In re McKenna, 93 B.R. 238, 241 (Bankr. E.D. Cal. 1988).

The function of an attorney for the trustee is to render to the estate services which cannot and should not properly be performed for compensation by one not licensed to practice law. In re Wildman, 72 B.R. 700, 706 (Bankr.N.D.Ill.1987); In re Shades of Beauty, Inc., 56 B.R. 946, 949 (Bankr.E.D.N.Y.1986), aff'd, 95 B.R. 17 (E.D.N.Y.1988). While trustees generally perform all ministerial and administrative duties of the estate, it is the responsibility of an attorney appointed to represent the estate to exercise professional skills and expertise beyond the ordinary knowledge and skill of the trustee. In re King, 88 B.R. at 770. Accordingly, before the attorney for the trustee can be compensated, the court must determine which services performed were truly legal in nature, and which were actually the ministerial duties of the trustee. In re Wildman, 72 B.R. at 706; In re Taylor, 66 B.R. 390, 393 (Bankr. W.D. Pa.1986).

The burden is on the trustee to demonstrate that services for which attorneys fees are sought are not duties generally performed without the assistance of

7

attorney rates for performing his duties as Trustee.  She challenged "the lack of demarcation between trustee services and attorney services and the insufficiency of explanatory information to determine the nature of the services rendered.  For example, she suggested that when Attorney Murphy used the word "review" it is impossible to distinguish whether that service was performed in his role as trustee or in his role as attorney.  Ms. Hed also complained that there was no breakdown between "review" and "revise" when used in the same time entry, no distinction between revisions for legal matters or factual matters and insufficient information relative to other entries such as "conference with," "emails to" and "prepare" for the Court to ascertain whether legal work was being performed.  Ms. Hed sought not just a significant reduction in the fees sought by Attorney Murphy as counsel to the Trustee but disallowance of virtually all fees personally  sought by him.

In his response, Attorney Murphy, both in his capacity as Trustee and as counsel to the Trustee, asked the Court to overrule Ms. Hed's Partial Opposition.  Citing <u>United States</u>

_____

counsel. <u>In re McKenna</u>, 93 B.R. at 242.

Whether an act is that of a "trustee enlightened by legal understanding" or that of a "lawyer-made-knowledgeable of bankruptcy by his trustee appointment" is a distinction difficult to draw. <u>In re Whitney</u>, 27 B.R. 352, 354 (Bankr. D. Me. 1983). However, courts have consistently held that where an application fails to reveal unusual difficulties or extraordinary legal effort on behalf of the trustee, particularly in the performance of the trustee's own statutory duties, fees for counsel should be denied. <u>In re Whitney</u>, 27 B.R. at 354; <u>In re Red Cross Hosp. Assoc., Inc.</u>, 18 B.R. 593, 595 (Bankr. W.D. Ky. 1982).

<u>In re Gary Fairbanks, Inc.</u>, 111 B.R. at 811.

Trustee v. Porter, Wright, Morris & Arthur (In re J.W. Knapp Co.), 930 F.2d 386, 388 (4th Cir.

1991); In re Meade Land and Dev. Co., Inc., 527 F.2d 280, 285 (3d Cir.1975);[5] In re Schiff, No.

04-14811, 2010 WL 3219535 at *4 (Bankr. S.D.N.Y. Aug. 10, 2010); and  In re Howard Love

Pipeline Supply Co., 253 B.R. 781, 789 (Bankr. E.D. Tex. 2000), he stated that  "[w]hether

services by a trustee in his capacity as counsel are compensable depends upon the nature of

the services performed. Such services are compensable where they 'could colorably constitute

the  type  of  services  one  would  reasonably  expect  an  attorney  to  perform  under  the

circumstances.'" The Trustee added that his time entries for services performed as trustee were

separately set forth on Exhibit B to the Interim Application and that the time entries for

services performed by the attorneys at M & K as counsel to the Trustee  were set forth on

---

[5] The Third Circuit in In re Mead Land & Dev. Co., Inc.,  a case decided before the
1978 Bankruptcy Act when the principal of economy of the estate was the foremost
consideration rather than the cost of comparable services, see In re Busy Beaver Bldg.
Centers, Inc., 19 F.3d 833, 849 n.20 (3d Cir. 1994),  prevailed, stated:

> The line between legal and non-legal services and between necessary legal
> services and ministerial duties of the Trustee, requiring only sound business
> judgment, is not easy to draw. Consequently, substantial latitude must be
> accorded the Bankruptcy Judge in the drawing process because he is best
> able to observe and evaluate counsel's performance. To assist the judge in
> this process, counsel's petition and supporting affidavit should describe with
> reasonable specificity the services for which compensation is claimed as well
> as the hours spent thereon. If such services could colorably constitute the
> type of services one would reasonably expect an attorney to perform under
> the circumstances, and are otherwise compensable, we think the Bankruptcy
> Judge is entitled to conclude therefrom that the petitioner has made out a
> prima facie showing that the services were compensable legal services, in the
> absence of an evidentiary showing to the contrary.

527 F.2d at 285 (footnote omitted).  See also In re J.W. Knapp Co., 930 F.2d at 388 (citing In re
Meade Land Dev. Co., Inc., 527 F.2d at 286).

Exhibit D.  The Trustee also noted that he, in his role as counsel to the Trustee, and another partner at M & K supervised and managed the case and that his services as counsel were "demonstrably in the nature of those routinely performed by attorneys" and constituted less that 9% of the total time billed.  Attorney Murphy maintained that Ms. Hed's contention that the descriptions of services were inadequate was invalid because reviewing and revising documents is consistent with his role as a supervising attorney.  Attorney Murphy, as counsel to the Trustee, citing  In re Casco Bay Lines, Inc., 25 B.R. 747, 756 n.18 (B.A.P. 1st Cir. 1982)(quoting Perkins v. New Orleans Athletic Club, 429 F.Supp. 661, 667 (E.D. La. 1976)), concluded:

> Ms. Hed has, throughout this proceeding, stubbornly pursued untenable and dubious positions which prolonged the administration of the Estate and increased costs to the parties. Ironically, having done so, Ms. Hed now complains about those costs. Such complaints should be summarily dismissed. "Those who elect a militant defense . . . [are responsible for] the time and effort they exact from their opponents."

**IV. DISCUSSION**

Upon consideration of the positions of the parties summarized above and the authorities cited, the Court overrules the Partial Opposition of Ms. Hed.  The Court allows the Trustee his interim commission in the amount of $50,000 pursuant to 11 U.S.C. § 326.  Section 330(a) of the Bankruptcy Code provides that the court may award to a trustee or a professional person employed under 11 U.S.C. § 327 reasonable compensation for all actual, necessary services and reimburse the trustee or professional person for actual, necessary expenses incurred

in performing such services.[6]  The compensation payable to a Chapter 7 trustee is a commission

based upon a percentage of moneys disbursed in the case. *See* 11 U.S.C. §§ 326,  330(a)(3), (7).[7]

---

[6] Section 330(a) provides:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103–

> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a).

[7] Subsections 330(a)(3) and (a)(7) provide:

(3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–

> (A) the time spent on such services;

> (B) the rates charged for such services;

> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

In <u>In re Wolverine Proctor & Schwartz, LLC</u>, No. 06-10815-JNF, 2012 WL 3930360 (Bankr. D.

Mass. Sept. 10, 2012), this Court stated:

> [T]he amount of any award of compensation to a trustee must be reasonable based
> on the extent and value of the trustee's services. *See* <u>In re Healy</u>, 440 B.R. 834, 835-
> 36 (Bankr. D. Idaho 2010); <u>In re Coyote Ranch Contractors, LLC</u>, 400 B.R. 84, 94-95
> (Bankr. N.D. Tex. 2009). Accordingly, a trustee's request for compensation may
> be reduced or denied if the services expended were not in the interests of the
> estate. *See* <u>In re Jaynes</u>, No. 01-32645, 2010 WL 3123154 (Bankr. W.D. Wis. Aug.
> 3, 2010) (trustee was entitled to a lower commission than statute permitted to the
> extent the trustee's efforts were disproportionate to assets recovered); <u>In re
> Owens</u>, No. 05-70329-fra7, 2008 WL 4224530 (Bankr. D. Ore. Sept. 15,
> 2008)(trustee's sale of real estate generated a broker's commission and increased
> trustee's commission, while reducing amount payable to unsecured creditors).
> Thus, a trustee's commission under § 326(a) is not a per se entitlement to the total
> amount of the commission calculated using the statutory formula, and the court
> still must determine the reasonableness of the Chapter 7 trustee's commission,
> considering numerous factors relating to the work performed and value of
> services as well as consideration of the formula. *See* <u>In re C & D Dock Works, Inc.</u>,
> 437 B.R. 443 (Bankr. M.D. Fla. 2010); <u>In re Clemens</u>, 349 B.R. 725 (Banrk. D. Utah
> 2006). *But see* <u>In re Salgado-Nava</u>, 473 B.R. 911, 921 (B.A.P. 9th Cir. 2012) ("absent
> extraordinary circumstances, chapter 7, 12 and 13 trustee fees should be presumed
> reasonable if they are requested at the statutory rate. Congress would not have set

---

> > (E) with respect to a professional person, whether the person is
> > board certified or otherwise has demonstrated skill and
> > experience in the bankruptcy field; and
>
> > (F) whether the compensation is reasonable based on the
> > customary compensation charged by comparably skilled
> > practitioners in cases other than cases under this title.
>
> >                              ***
>
> > (7) In determining the amount of reasonable compensation to be
> > awarded to a trustee, the court shall treat such compensation as
> > a commission, based on section 326.

11 U.S.C. § 330(a)(3), (7).

commission rates for bankruptcy trustees in §§ 326 and 330(a)(7), and taken them out of the considerations set forth in § 330(a)(3), unless it considered them reasonable in most instances. Thus, absent extraordinary circumstances, bankruptcy courts should approve chapter 7, 12 and 13 trustee fees without any significant additional review.").

In re Wolverine Proctor & Schwartz, LLC, 2012 WL 3930360 at *4.

The Trustee represented, and Ms. Hed did not dispute, that he has sufficient funds to pay all allowed claims in full.  Under those circumstances, the Trustee is entitled to the full amount of his commission. The payment of all claims in full may be the goal but is seldom the reality in Chapter 7 cases.  Accordingly, the bankruptcy appellate panel's observation  in In re Salgado-Nava, 473 B.R. 911, 921 (B.A.P. 9th Cir. 2012), namely that trustees' commission should be presumed to be reasonable, is applicable here.  The Trustee's commission must be presumed to be reasonable because the only extraordinary circumstance present in this case is a positive one, namely the payment of claims in full as well as substantial distributions to shareholders.

With respect to compensation for professional services, the Court may reduce the amount of a professional's application for compensation if the court determines a proposed fee is unreasonable. See 11 U.S.C. § 330(a)(2). See Wolvervine, 2012 WL 3930360 at *5. See also Houlihan Lokey Howard & Zukin Capital v. Unsecured Creditors' Liquidating Trust (In re Commercial Fin. Servs., Inc.), 427 F. 3d 804 (10th Cir. 2005).   In Wolverine, this Court stated:

Subsection (a)(3) of § 330 provides that, in determining the reasonableness of any compensation to be awarded, the court shall consider the extent and value of such services, taking into account all relevant factors including: the time spent; the rates charged; whether the services were necessary or beneficial at the time they were rendered; whether the services were performed within a reasonable time commensurate with the complexity of the problem; whether the professional has demonstrated skill and experience in the bankruptcy field; and whether the compensation is reasonable based on the customary compensation charged by

13

comparably skilled practitioners in nonbankruptcy cases. *See* 11 U.S.C. § 330(a)(3). Moreover, pursuant to subsection 330(a)(4), the court must disallow compensation for unnecessary duplication of services or services that were not reasonably likely to benefit the debtor's estate. *See* 11 U.S.C. § 330(a)(4)(A)(ii)(I). In analyzing fees under § 330 and determining their reasonableness, courts have focused on the following four questions: 1) Were the services necessary or beneficial to the estate?; 2) Are the services adequately documented?; 3) Did the professional exercise proper billing judgment?; and 4) Are the fees reasonable taking into account the statutory factors?

Id.

The Court finds Ms. Hed's Partial Opposition is without merit. Trustees are authorized to employ themselves and their law firms as counsel. In this case, Attorney Murphy whose biography reflects over thirty years of practice as a bankruptcy professional appropriately staffed and managed this Chapter 7 case. As counsel to the Trustee and as a senior partner at M & K, he properly reviewed and revised pleadings prepared by associates, appropriately engaged in negotiations with Excel, and dutifully attended to legal matters in the bankruptcy case detailed in the Interim Application.

**V. CONCLUSION**

In view of the foregoing the Court shall enter an order approving the First Interim Application and overruling Ms. Hed's Partial Opposition.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: November 5, 2012

14